IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FELITA THOMAS, *Administrator of the* )
*Estate of Matthew Thomas, Deceased*, )
     Plaintiff, )
      )
     v. )          Civil Action No. 3:24CV486 (RCY)
      )
PAMUNKEY REGIONAL JAIL )
AUTHORITY, *et al.*, )
     Defendants. )
      )

## MEMORANDUM OPINION

     This is a wrongful death action stemming from the death of a pretrial detainee at Pamunkey Regional Jail.  Plaintiff brings this lawsuit as the administrator of Mr. Thomas's estate and alleges Defendants were negligent and violated Mr. Thomas's Fourteenth Amendment Due Process Rights in their deliberate indifference to Mr. Thomas's serious medical needs, resulting in his death.  This matter is presently before the Court on Plaintiff's Motion for Leave to Amend Complaint and Accompanying Memorandum In Support Thereof ("Motion to Amend," ECF No. 69).   Only Defendants Pamunkey Regional Jail Authority ("PRJA"), Bidemi Adesina ("Adesina"), Richard Hagen ("Hagen"), Matthew Philpott ("Philpott"), and Eugene Emelianov ("Emelianov," collectively "PRJ Defendants") oppose Plaintiff's amendment.   Therefore, the Court only addresses the issues raised within Plaintiff's Motion to Amend, the PRJ Defendants' Brief in Opposition, and Plaintiff's Reply.  The issue has been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions and argument would not aid the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated below, the Court will deny in part and grant in part Plaintiff's Motion to Amend.

## I. PROCEDURAL HISTORY

On July 1, 2024, Plaintiff filed her Complaint.  Compl., ECF No. 1.  Defendants PRJA, Adesina, and Hagen timely filed their first Motion to Dismiss on October 18, 2024.  ECF No. 38. Later, Defendants Shridhar Bhat, Jennifer Taylor, Yolanda Vines, and CBH Medical of Virginia LLC (collectively, "Medical Defendants") filed their first Motion to Dismiss on November 8, 2024.  ECF No. 51.  Shortly thereafter, Defendants Emelianov and Philpott filed their first Motion to Dismiss on November 14, 2024.  ECF No. 55.  On November 21, 2024, Plaintiff filed her Amended Complaint, which the Court found was made as a matter of course.  Am. Compl., ECF No. 58; *see* Mem. Order, ECF No. 60.

On December 3, 2024, PRJ Defendants filed their Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 62, and on December 6, 2024, Medical Defendants also filed their Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 64.  On December 17, 2024, Plaintiff moved for an extension of time to respond to Defendants' motions to dismiss, ECF No. 68, which the Court granted.  Order, ECF No. 70.

On January 1, 2025, Plaintiff filed the instant Motion for Leave to Amend Complaint and Accompanying Memorandum in Support Thereof, which included Plaintiff's proposed Second Amended Complaint ("SAC").  Mot. Amend, ECF No. 69; SAC, ECF No. 69-1.  Defendants Pamunkey Regional Jail Authority ("PRJA"), Bidemi Adesina ("Adesina"), Richard Hagen ("Hagen"), Matthew Philpott ("Philpott"), and Eugene Emelianov ("Emelianov," collectively "PRJ Defendants") filed their Opposition to Plaintiff's Motion for Leave to Amend on January 14, 2025.  Resp. Opp'n, ECF No. 71.  Plaintiff filed her Reply Brief in Support on January 21, 2025, Reply, ECF No. 72, rendering the matter ripe for review.

## II. FACTUAL ALLEGATIONS

On July 17, 2022, Mr. Mathew Rondell Thomas was taken into custody at Pamunkey Regional Jail.  SAC ¶ 22.  During Mr. Thomas's intake, he informed Nurse Vines that he was experiencing nausea, severe abdominal pain, and acid reflex, and that he had been vomiting.  *Id.* ¶ 23.  At that time, Mr. Thomas's blood pressure was also elevated, but he was not provided with his prescribed medication.  *Id.* ¶ 24.  Mr. Thomas further informed Nurse Vines that he had recently been released from the hospital due to complications with both his pancreas and kidneys.  *Id.*

After Mr. Thomas's intake, he immediately requested a "sick call" to see a nurse.  *Id.* ¶ 26. He complained of severe stomach pain and repeatedly requested access to his acid reflux medication.  *Id.* ¶ 29.  Mr. Thomas's complaints were made in the vicinity of Defendants Philpott and Emelianov, both of whom were employed as corrections officers at Pamunkey Regional Jail. *Id.* ¶¶ 10–11, 29.

On July 18, 2022, Mr. Thomas made three calls to the infirmary to Nurse Taylor.  *Id.* ¶¶ 30–32.  In each of those calls, Mr. Thomas complained about severe nausea, vomiting, and heartburn.  *Id.*  After contacting Nurse Taylor for a third time,[1] Nurse Taylor and Defendants Philpott and Emelianov observed Mr. Thomas lying on the floor screaming out in pain.  *Id.* ¶ 32. During that time, Mr. Thomas repeatedly requested medical assistance.  *Id.* ¶ 34.  However, Defendants Philpott and Emelianov did not provide emergency medical aid or transport Mr. Thomas to the hospital.  *Id.* ¶ 35.  Instead, Plaintiff alleges that Defendants Philpott and Emelianov viewed Mr. Thomas as a nuisance and denied him his medication.  *Id.*

---

[1] While it is not entirely clear from the SAC, it appears Mr. Thomas may have been in the infirmary during his third interaction with Nurse Taylor.  *See* SAC ¶ 32 ("After a third call/visit to the infirmary"); *id.* ¶ 37 ("[F]orcibly removed Mr. Thomas from the infirmary").

At this point, as Mr. Thomas's hands and feet were visibly swollen, he became "desperate for his medication" and continued to plead for assistance. *Id.* ¶ 36. "In response to Mr. Thomas's repeated requests" for medical assistance, Defendants Emelianov and Philpott "forcibly removed Mr. Thomas from the infirmary" and placed him on suicide watch, where he would be isolated. *Id.* ¶ 37. Defendants Emelianov and Philpott allegedly moved Mr. Thomas based on suicidal ideations. *Id.* Witnesses never heard Mr. Thomas threaten self-harm; however, a witness did overhear Mr. Thomas ask Defendants Philpott and Emelianov, "[i]s this how you gon' treat me just because I need my medication?" *Id.* ¶ 38. Another PRJA employee purportedly stated "Officer Philpott lied. He lied. [Mr. Thomas] never said anything about wanting to harm himself." *Id.* ¶ 39. Defendant Emelianov, "who went right along with" moving Mr. Thomas to isolation and suicide watch, "later dispelled any allegation that Mr. Thomas threatened suicide" or self-harm. *Id.* ¶¶ 39–40. Throughout this time, Mr. Thomas continued to request that he be taken to the hospital. *Id.* ¶ 41.

On the morning of July 19, 2022, Dr. Bhat examined Mr. Thomas but ultimately returned him to his place on suicide watch by 10:30 a.m. that morning. *Id.* ¶¶ 45, 51. By this time, Mr. Thomas had lost an appreciable amount of weight and was in a wheelchair. *Id.* ¶ 45. He was no longer able to sit up due to weakness and pain. *Id.* ¶ 46.

At approximately 6:00 p.m. that evening, Defendants Adesina and Hagen began their shifts as "CCA operator" and shift commander, respectively. *Id.* ¶¶ 65–66. Defendants Adesina and Hagen, among other correctional staff, were required to check on Mr. Thomas's well-being every fifteen minutes while he remained in isolation. *Id.* ¶ 54. Not only does Plaintiff allege that they failed to conduct these required checks, but Defendants Adesina and Hagen also denied Nurse Practitioner ("NP") Beaver's request to "get into the medical rooms to check the vitals of infirm

4

patients," which included Mr. Thomas.  *Id.* ¶ 53.  NP Beaver was not given access to Mr. Thomas until breakfast time on July 20, 2022, at which point he had succumbed to his injuries.  *Id.* ¶¶ 53, 55–56.  Mr. Thomas was found lying on his mattress and facing the toilet, with brown blood and vomit around his mouth.  *Id.* ¶¶ 58–59.  It is estimated that Mr. Thomas had passed away at least four hours before he was found unresponsive.  *Id.* ¶ 56.

Over Mr. Thomas's three-day detention, he lost at least eleven pounds and became wheelchair bound.  *Id.* ¶ 63.  It was later determined that Mr. Thomas's cause of death was due to complications related to acute necrotizing esophagitis, including a perforated ulcer at his gastroesophageal junction which led to Mr. Thomas's gastric contents leaking into surrounding soft tissues and gastrointestinal bleeding.  *Id.* ¶ 60.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave" to amend "when justice so requires." The Supreme Court has emphasized that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  In accord, the Fourth Circuit's policy is to "liberally allow amendment." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### IV. DISCUSSION

Plaintiff seeks to amend her Complaint for a second time to cure certain deficiencies, add a defendant, and remove two counts from her Amended Complaint.  Mot. Amend 1–2.  She argues

5

that amendment is appropriate because it is not made in bad faith, would not be prejudicial to Defendants, and is not futile.  *Id.*  PRJ Defendants disagree and argue that amendment would be both prejudicial and futile.  Resp. Opp'n 4–5.

Since PRJ Defendants do not argue that Plaintiff's proposed amendment is made in bad faith, the Court will begin its analysis with whether amendment would be prejudicial, before turning to whether amendment would be futile.

## A.  PRJ Defendants Are Not Prejudiced By A Second Amended Complaint

At the outset, the Court acknowledges that prejudice is "[p]erhaps the most important factor" for a court considering whether to grant leave to amend.  6 Charles A. Right & Arthur R. Miller, Fed. Prac. & Proc. § 1487 (3d ed. 2024) (hereinafter, "Wright & Miller").  Despite the importance of this factor, there are no bright line rules for courts to apply in determining whether a proposed amendment would prejudice the opposing party sufficient to justify denial of leave to amend.  *See id.*

Caselaw provides some guidance.  To that end, if an amendment would "substantially change[] the theory on which the case has been proceeding *and* is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial."  *Id.* (collecting cases) (emphasis added); *see Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing."  *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).  For example, an amendment that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial" would be considered prejudicial.  *Id.* (citing *Johnson*, 785 F.2d at 509). In contrast, an amendment is not prejudicial if it "merely adds an additional theory of recovery to the facts already

pled and is offered before any discovery has occurred." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."); *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 280 (4th Cir. 1987) (finding no prejudice where (1) any delay in bringing the new claim was merely a symptom of the already "desultory pace" of the case, and (2) the facts on which the new count that the plaintiffs sought to add were already well known to the defendants).

Plaintiff primarily argues that her proposed amendment would not be prejudicial to PRJ Defendants because the parties are still in the early stages of this litigation. Reply 2. Plaintiff notes that there has been no discovery thus far, nor has the Court entered a scheduling order. *Id.* On the other hand, PRJ Defendants argue that amendment is prejudicial because this is Plaintiff's second time seeking amendment, yet she has failed to remedy the deficiencies or respond to the substantive arguments raised in their previous motions to dismiss. Resp. Opp'n 4–5.

The Court disagrees with PRJ Defendants and finds that Plaintiff's amendment is not unduly prejudicial to PRJ Defendants at this juncture. As Plaintiff correctly notes, this case is still in the early stages of litigation. There has been no initial pretrial conference, no discovery conducted, and no trial date set. Moreover, the theory of the case, as alleged against PRJ Defendants, has not changed significantly in the Second Amended Complaint. *Compare* Am. Compl., *with* SAC. Finally, PRJ Defendants' argument concerning Plaintiff's lack of a substantive response is moot based on Plaintiff's Reply, wherein she addresses PRJ Defendants' substantive arguments, most of which are raised in PRJ Defendants' pending Motion to Dismiss, ECF No. 62.

For these reasons, the Court does not find that amendment would be unduly prejudicial to PRJ Defendants.

**B. Plaintiff's Second Amended Complaint Is Not Futile**

Next, Court considers whether amendment would be futile.

Courts may deny leave to amend a pleading if the proposed amendments would be futile. *Save Our Sound OBX, Inc. v. N.C. DOT*, 914 F.3d 213, 228 (4th Cir. 2019). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face ... [or] if the claim it presents would not survive a motion to dismiss." *Id. See, e.g.*, *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 375 (4th Cir. 2008); *Van Leer v. Deutsche Bank Sec., Inc.*, 479 F. App'x 475, 479 (4th Cir. 2012) (unpublished).

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true all well-pleaded allegations and view[s] the [pleading] in the light most favorable to [the claimant]." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). All reasonable inferences that can be drawn from the pleading are drawn in the claimant's favor. *See Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). Federal Rule of Civil Procedure 8 only requires that a pleading set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, "[t]o survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

8

Plaintiff argues that her SAC is not futile because she has sufficiently stated a claim for simple negligence (Count I), gross negligence (Count II), and willful and wanton negligence (Count III) against both the Individual PRJ Defendants ("IP Defendants"), Reply 4–10, and against Defendant PRJA, through the theory of *respondeat superior*. *Id.* at 10–12. Further, Plaintiff contends that she has adequately stated a claim against PRJ Defendants pursuant to 42 U.S.C. § 1983 for a violation of Mr. Thomas's Fourteenth Amendment right to be free from deliberate indifference to his serious medical need. *Id.* at 12–14.

PRJ Defendants argue that amendment is futile for the same reasons identified in their prior motions to dismiss. PRJ Defendants first argue that the SAC is futile because it fails to state a claim for any form of negligence against any defendant. Resp. Opp'n 5–12. Even if Plaintiff's allegations were sufficient, Defendant PRJA asserts that it is entitled to sovereign immunity for simple negligence. *Id.* at 6–8. Further, Defendant PRJA argues that it is not liable for any form of negligence under the doctrine of *respondeat superior*. Id. at 13–14. Because the allegations fail to establish any form of negligence against IP Defendants—Defendant PRJA's employees— Defendant PRJA contends it simply cannot be held liable as the employer. *Id.* at 14.[2] Finally, with respect to the alleged Fourteenth Amendment violation, PRJ Defendants argue that Plaintiff fails to state a § 1983 deliberate indifference claim against IP Defendants, Resp. Opp'n 14–15, but even if Plaintiff did successfully state a § 1983 claim, the IP Defendants would be entitled to qualified immunity. *Id.* at 19–20.

---

[2] In their briefing on this issue, both PRJ Defendants and Plaintiff make arguments pertaining to Defendant PRJA's liability for the negligent acts of Medical Defendants. *See* Mem. Opp'n 13; Reply 10–12. Specifically, Defendant PRJA contends that the independent contractor status of Medical Defendants bars any liability for Defendant PRJA under a theory of *respondeat superior*. Resp. Opp'n 13. However, only PRJ Defendants— Defendants PRJA, Adesina, Hagen, Philpott, and Emelianov—oppose Plaintiff's Motion to Amend. Medical Defendants do not oppose Plaintiff's proposed SAC. Because the parties both address the implications of amendment on this issue for Medical Defendants, the Court will briefly address these arguments, *infra*, for clarity on the *respondeat superior* issue.

Although the parties address Plaintiff's negligence claims first, the Court will begin its own analysis with Plaintiff's § 1983 claim, as this analysis will be relevant to all remaining counts.

### 1. Plaintiff's Section 1983 Fourteenth Amendment Claim

PRJ Defendants do not address why Plaintiff fails to state a § 1983 claim against Defendant PRJA specifically. *See* Mem. Opp'n 14–19. IP Defendants argue that Plaintiff's § 1983 claim fails because she does not allege conduct that could reasonably be considered "deliberate indifference." Resp. Opp'n 15. Plaintiff disagrees and insists PRJ Defendants' denial of access to medical care was objectively unreasonable, amounting to deliberate indifference. Reply 12–14.

Pretrial detainees are protected by the Fourteenth Amendment Due Process Clause from any form of punishment. *Short v. Hartman*, 87 F.4th 593, 606 (4th Cir. 2023). This includes protection from "any pretrial conditions that 'amount to punishment'" or deliberate indifference to a serious medical need because "no legitimate nonpunitive goal is served by a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent." *Id.* (quoting *Martin v. Gentile*, 849 F.2d 863, 870–71 (4th Cir. 1988)). In *Short v. Hartman*, the Fourth Circuit revised its approach to pretrial detainee deliberate indifference claims. *See id.* at 605–12. Under the new framework, pretrial detainees must plead the following four elements to state such a claim:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* at 611. The critical difference post-*Short* is that a plaintiff no longer needs to demonstrate that a defendant possessed actual knowledge of the pretrial detainee's medical condition. *Id.* Instead,

a plaintiff must show that a defendant's "action or inaction proved 'objectively unreasonable.'" *Sosa v. Hill*, 2025 WL 864291, at *9 (E.D. Va. Mar. 19, 2025) (quoting *Short*, 87 F.4th at 611).

The Court will address whether Plaintiff sufficiently alleges a § 1983 claim against IP Defendants, beginning with whether she sufficiently alleged that Mr. Thomas had a medical condition or injury that posed a substantial risk.

### a. Medical Condition or Injury That Posed a Substantial Risk

To constitute a medical condition under *Short*'s first prong, the medical need must be one "that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sosa*, 2025 WL 864291 at *9 (quoting *Lapp v. United States*, 706 F. Supp. 3d 568, 577 (E.D. Va. Mar. 19, 2025)). Courts in this district have found "consistent pleas for help and complaints about headaches, nausea, hot and cold flashes, head pressure, and inability to hold down food" readily demonstrate a serious medical need. *Sams v. Armor Corr. Health Servs.*, 2020 WL 5835310, at * 21 (E.D. Va. Sept. 30, 2020); *Keeton v. Dudley*, 753 F. Supp. 3d 476, 483 (E.D. Va. Oct. 15, 2024) (finding that the detainee's "consistent complaints of severe chest and back pain, . . . various pleas for medical assistance," inability to walk, complaints of being delusional, and inability to control bowel movements constituted a serious medical need); *Dallas v. Craft*, 2022 WL 2079312, at *11 (E.D. Va. June 9, 2022) (finding "complaints about severe stomach pain, nausea, cramping, excessive sweating, vomiting, and, at times, inability to walk" sufficient to show a serious medical need); *Tharrington v. Virginia*, 2018 WL 4515899, at *8 (W.D. Va. Sept. 20, 2018) (holding that repeated complaints of severe pain related to a prior surgery, "falls, and other health issues," is sufficient to demonstrate a serious medical need).

Plaintiff argues that she sufficiently alleged in her SAC that Mr. Thomas suffered from a medical condition or injury that posed a substantial risk. Reply 12. Specifically, Plaintiff points out that Mr. Thomas informed jail staff about complications with his kidneys, pancreas, and gastrointestinal tract, and that he exhibited "outward manifestations of his dire medical need." *Id.* Namely, Mr. Thomas's blood pressure was elevated, and he repeatedly asked to be taken to the hospital and be given his prescription medication. *Id.*

IP Defendants claim that Plaintiff fails to allege the existence of a medical condition that posed a substantial risk of serious harm. Resp. Opp'n 15. IP Defendants highlight that that Mr. Thomas allegedly notified *medical staff*, not IP Defendants specifically, about his prior hospitalization, the symptoms he was experiencing, and that he would "soon have to go on dialysis." *Id.* at 15–17 (citing SAC ¶ 1) (emphasis added). IP Defendants go on to argue that "mere complaints of stomach pain, nausea, vomiting, and acid reflux are not sufficiently serious medical conditions." *Id.* at 15. IP Defendants also contest that they "understood what could happen if [Mr. Thomas] did not receive those medications" and contend that Plaintiff has failed to articulate how Mr. Thomas's symptoms posed a substantial risk or how the IP Defendants were supposed to respond to Plaintiff's complaints. *Id.* at 16–17.

As an initial matter, the Court notes that two of IP Defendants' arguments—(1) that Mr. Thomas notified medical staff, rather than the IP Defendants, and (2) that the IP Defendant did not anticipate that death would result from Mr. Thomas being deprived of his medications—are better suited for the second and third prongs of the *Short* deliberate indifference framework. *See* Resp. Opp'n 15–17. With regards to the first element of Plaintiff's Fourteenth Amendment claim, the issue is not whether Mr. Thomas notified IP Defendants or Medical Defendants, or whether IP Defendants knew what would happen to Mr. Thomas should they fail to provide adequate care.

Rather, the issue is whether Mr. Thomas had a medical need "that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sosa*, 2025 WL 864291, at *9. Neither of the arguments identified above speak directly to this issue.

As to IP Defendants' final argument, the Court disagrees with IP Defendants' assertion that "mere complaints of stomach pain, nausea, vomiting, and acid reflux are not sufficiently serious medical conditions." Resp. Opp'n 15. As stated above, district courts have found that "consistent pleas for help and complaints about headaches, nausea, hot and cold flashes, head pressure, and inability to hold down food" readily demonstrates a serious medical need. *Sams*, 2020 WL 5835310, at *21. Further, Plaintiff alleged that Mr. Thomas experienced more than mere complaints of stomach pain, nausea, vomiting and acid reflux. Throughout her Complaint, Plaintiff alleges that Mr. Thomas was continuously nauseated, SAC ¶¶ 23, 29–30, experienced severe abdominal pain, *id.* ¶¶ 23, 29, 32, vomited multiple times, *id.* ¶¶ 23, 30, 52, had swollen extremities, *id.* ¶ 36, requested medical attention, *id.* ¶¶ 26, 30–32, 34–36, 41, requested his medications, *id.* ¶¶ 29, 35, 38, physically deteriorated to the point that he became unable to walk or sit up, *id.* ¶¶ 45–46, 52, 63, and lost eleven pounds over the course of two to three days, *id.* ¶ 63. Taken together, it is readily apparent that Mr. Thomas had a medical condition or injury that posed a substantial risk throughout his pretrial detainment.

### b. Defendants Intentionally, Knowingly, or Recklessly Acted or Failed to Act

Under the second element, a plaintiff must allege that "the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed." *Short*, 87 F.4th at 611. When a plaintiff alleges deliberate indifference against a non-medical prison official, she must establish that defendants "(1) 'failed promptly to provide an

inmate with needed medical care,' (2) 'deliberately interfered with the prison doctors' performance,' or (3) 'tacitly authorized or were indifferent to the prison physicians' constitutional violations.'" *Dallas v. Craft*, 2022 WL 2079312, at *11 (E.D. Va. June 9, 2022) (quoting *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)); *see Sosa*, 2025 WL 864291, at *10.  Courts have found that a prison official's failure to "respond to an inmate's known medical needs "raises an inference of deliberate indifference." *Sosa*, 2025 WL 864291, at *10 (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)).  Indeed, courts have found that "even a brief delay in calling for medical assistance may constitute deliberate indifference" when a prisoner shows outward signs of medical distress.  *Craft*, 2022 WL 2079312, at *13 (quoting *Sams*, 2020 WL 5835310, at *29).

IP Defendants contend that, even if Plaintiff sufficiently alleged a medical condition or injury that posed a substantial risk, Plaintiff fails to allege IP Defendants acted inappropriately. Resp. Opp'n 17–18.  IP Defendants attest that Plaintiff never alleges that they refused to provide Mr. Thomas with medical treatment, directed anyone else to refuse Mr. Thomas medical care, or were involved in Mr. Thomas's substantive medical treatment after his transfer to the medical unit. *Id.* at 17.  Although Plaintiff's Reply is not necessarily responsive to IP Defendants' arguments, Plaintiff highlights that she is not required to allege that IP Defendants knew of the exact nature of Mr. Thomas's medical ailment.  Reply 13.  Further, Plaintiff notes that Mr. Thomas did in fact notify Defendants Philpott and Emelianov and that Mr. Thomas's medical condition was patently obvious to all IP Defendants.  *Id.*

The Court finds that Plaintiff has sufficiently alleged that IP Defendants, at a minimum, recklessly failed to provide Mr. Thomas with appropriate medical care.  The Court will first

address the actions or inaction taken by Defendants Philpott and Emelianov, before turning to Defendants Adesina and Hagen.

### i.  *Philpott & Emelianov*

Plaintiff alleges Defendants Philpott and Emelianov repeatedly ignored Mr. Thomas's pleas for medical assistance, disregarded his request to go to the hospital, and moved Mr. Thomas to suicide watch, despite him not being suicidal.  SAC ¶¶ 34–40.  Nurse Taylor, who was a nurse at Pamunkey Regional Jail, was present during part of Defendants Philpott's and Emelianov's interactions with Mr. Thomas; however, as alleged, Defendants Philpott and Emelianov acted independently when they placed Mr. Thomas on suicide watch.  *See id.* ¶¶ 35–40, 42.  Viewing the SAC in the light most favorable to Plaintiff at this juncture, Plaintiff adequately states that Defendants Philpott and Emelianov placed Mr. Thomas on suicide watch without any indication that Mr. Thomas was, in fact, suicidal, *id.* ¶¶ 37–40, were dishonest about why they placed Mr. Thomas on suicide watch, *id.*, and placed Mr. Thomas on suicide watch despite knowing that he was suffering from a serious medical need.  *Id.* ¶¶ 35–36, 41.  For those reasons, the Court finds that Plaintiff has sufficiently alleged that Defendants Philpott and Emelianov failed to act appropriately by placing Mr. Thomas on suicide watch rather than getting him the medical care he needed.

### ii.  *Adesina & Hagen*

Contrary to IP Defendants assertions, Plaintiff does allege that Defendants Adesina and Hagen prevented NP Beaver from checking Mr. Thomas's vitals at some point between when they started their shifts, on or around 6:00 p.m. on July 19, 2022, and the morning of July 20, 2022.  SAC ¶¶ 54, 65.  Plaintiff's allegations establish that Defendants Adesina and Hagen "deliberately interfered with the prison [doctor's] performance."  *Craft*, 2022 WL 2079312, at *11.  While NP

15

Beaver is not a "doctor" per se, the Court finds that preventing medical personnel from assessing a medically compromised individual to be sufficiently analogous. Thus, Plaintiff's allegations in the SAC also establish that Defendants Adesina and Hagen failed to act appropriately in light of Mr. Thomas's condition.

### c. Defendants Knew or Should Have Known About Mr. Thomas's Condition And That Their Inaction Posed an Unjustifiably High Risk of Harm

Third, a plaintiff must allege "the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm." *Short*, 87 F.4th at 611. Under *Short*, a plaintiff no longer needs to show that a defendant had actual knowledge of a detainee's serious medical need and consciously disregarded the risk. *Id.* Rather, it is enough for a plaintiff to show that the defendant's action was "objectively unreasonable." *Id.* An action, or inaction, is "objectively unreasonable" when a "defendant should have known of that condition and that risk, and acted accordingly." *Id.*

Although medical providers may shield corrections officers who act on the express instruction of medical personnel from liability, this is not always the case. *See Short*, 87 F.4th at 614. To hold otherwise "would shield non-medical defendants from liability whenever a medical provider was at some point consulted." *Id.* Prison officials "face liability for their own decisions, made while [the inmate/detainee is] in their charge." *Id.* (quoting *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008)). For example, a corrections officer may not be shielded by a medical provider when no advice or treatment was provided, or when a corrections officer makes a decision, such as placing an individual in isolation, without consulting medical personnel. *Id.* at 615. Further, Government officials "who ignore indications that a . . . pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs." *Stevens v. Holler*, 68 F.4th 921, 933 (4th Cir. 2023).

Plaintiff contends that Defendants Philpott and Emelianov, knowing that Mr. Thomas was in great distress, denied him access to medical care, which Plaintiff argues is objectively unreasonable. Reply 13. With respect to Defendants Adesina and Hagen, Plaintiff avers that both Defendants actively prevented medical staff from seeing Mr. Thomas, thereby depriving him of medical care in a manner that was also objectively unreasonable. *Id.* In sum, Plaintiff asserts that all reasonable inferences lead to the conclusion that any reasonable person would have known that Mr. Thomas was dying. *Id.* In response, IP Defendants rest their argument on Fourth Circuit precedent which held that non-medical correctional staff may rely on the judgment of medical providers in correctional facilities. Resp. Opp'n 18 (citing *Miltier*, 896 F.2d at 854; *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *Estate of Harvey ex rel. Dent v. Roanoke City Sherriff's Off.*, 585 F. Supp. 2d 844, 857 (W.D. Va. 2008)).

The Court finds Plaintiff has adequately alleged that IP Defendants knew, or should have known, about Mr. Thomas's condition and their actions posed an unjustifiably high risk of harm to Mr. Thomas.

### i.  Philpott & Emelianov

Here, Plaintiff sufficiently alleges that Defendants Philpott and Emelianov knew that Mr. Thomas was suffering from a serious medical condition. Plaintiff alleges that Defendants Philpott and Emelianov observed Mr. Thomas lying on the floor and screaming in pain, SAC ¶ 32, heard Mr. Thomas repeatedly request emergency medical treatment, *id.* ¶ 34, heard Mr. Thomas complain of severe gastric pain, *id.* ¶ 29, and heard Mr. Thomas request his acid reflux medication. *Id.* Further, when drawing all inferences in the light most favorable to Plaintiff, it is reasonable to infer that Defendants Philpott and Emelianov would have noted Mr. Thomas's swollen extremities when they eventually transferred him to suicide watch. *See id.* ¶¶ 36–37.

Not only were Defendants Philpott and Emelianov aware of Mr. Thomas's serious ailments, but Plaintiff sufficiently alleges that their responses were inadequate. Defendants Philpott and Emelianov argue they relied on medical advice, based on Nurse Taylor's interaction with Mr. Thomas during their shift. Resp Opp'n 18. However, Nurse Taylor's interaction with Mr. Thomas cannot shield them from liability in this case. Although Nurse Taylor did eventually see Mr. Thomas in person on July 18, 2022, it was Defendants Philpott and Emelianov's decision to place Mr. Thomas on suicide watch. SAC ¶¶ 27, 37–40. Defendants Philpott and Emelianov placed Mr. Thomas on suicide watch despite his continued requests to go to the hospital and requests for his medication. *Id.* ¶¶ 35–41. There are no allegations that Defendants Philpott and Emelianov relied on medical advice to place Mr. Thomas in isolation/suicide watch. *See generally id.* Indeed, Plaintiff alleges that Defendants Philpott and Emelianov lied in order to place Mr. Thomas in isolation and on suicide watch because of his continual pleas for help. *Id.* ¶¶ 37–40. As alleged, Defendants Philpott and Emelianov's acts are obviously unreasonable in light of Mr. Thomas's obvious medical need, and posed an unjustifiable risk of harm to Mr. Thomas.

### ii. Adesina and Hagen

Like Defendant Emelianov and Philpott, Plaintiff sufficiently alleges that Defendants Adesina and Hagen knew or should have known that Mr. Thomas was suffering from a serious medical condition because NP Beaver requested to check on infirm patients, which would have included Mr. Thomas. SAC ¶ 53. If Defendants Adesina and Hagen were not already on notice of Mr. Thomas's serious medical condition, based on their requirement to check on Mr. Thomas every fifteen minutes, NP Beaver's request to see Mr. Thomas would have put them on notice. *Id.* ¶¶ 46, 52–54; *Scinto*, 841 F.3d at 226 ("A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending

to establish such knowledge, including evidence that a prison official knew of a substantial risk from the very fact that the risk was obvious.").   To the extent IP Defendants claim that Defendants Adesina and Hagen relied on the advice of medical providers, that argument fails, as Plaintiff alleges Defendants Adesina and Hagen actively *prevented* NP Beaver from checking was Thomas while he was on suicide watch.  *Id.* ¶¶ 51, 53.  The Court finds that denying NP Beaver's access to Mr. Thomas, thereby preventing an infirm patient from receiving medical care, is objectively unreasonable and poses an unjustifiable risk of harm, as demonstrated by Mr. Thomas's death.

> ### d. Mr. Thomas was Harmed

Lastly, the Court must assess whether IP Defendants' action resulted in Mr. Thomas being harmed.  *Short*, 87 F.4th at 611.  Plaintiff states that it is reasonable to infer IP Defendants' actions and inactions, in light of Mr. Thomas's medical condition, would result in great harm to Mr. Thomas.  Reply 13.  On the other hand, IP Defendants argue Plaintiff does not plausibly allege that IP Defendants' actions or inactions resulted in any harm to Mr. Thomas.  Resp. Opp'n 19.  IP Defendants point out, by Plaintiff's own admission, that it was IP Defendants who transferred Mr. Thomas to the medical unit to receive care.  *Id.*

The Court agrees with Plaintiff.  At this juncture, and drawing all reasonable inferences from Plaintiff's SAC, it is reasonable to infer that Defendants Philpott's and Emelianov's decision to transfer Mr. Thomas to suicide watch, rather than provide Mr. Thomas with medical care, resulted in additional harm to Mr. Thomas.  Similarly, it is reasonable to infer that Defendants Adesina and Hagen's interference with NP Beaver's medical care resulted in further harm to Mr. Thomas.

For all the reasons described above, the Court finds that Plaintiff states a § 1983 deliberate indifference claim against IP Defendant, and thus, amendment as to this issue is not futile.

2. Qualified Immunity

IP Defendants argue that even if the Court found that they were deliberately indifferent under §1983, they are entitled to qualified immunity. Resp. Opp'n 19.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

In this case, IP Defendants do not contest that the right is clearly established. Resp Opp'n 19. Rather, IP Defendants argue that Plaintiff "must plead facts sufficient to show intentional conduct in the SAC," which they contend Plaintiff fails to do. Resp. Opp'n 19–20 (citing *Thorpe v. Clarke*, 37 F.4th 926, 934 (4th Cir. 2022)). IP Defendants also aver that Plaintiff is required to plead facts that demonstrate IP Defendants were aware of a substantial risk of serious harm. *Id.* at 20. Plaintiff, on the other hand, firmly contests IP Defendants' right to qualified immunity. Reply 14. Plaintiff alleges that IP Defendants were not only grossly negligent, but that they engaged in affirmative acts that ultimately led to Mr. Thomas's death. *Id.*

Here, Mr. Thomas's right to be free from a state actor's deliberate indifference to a serious medical need is not in question. Rather, the question before the Court is whether Plaintiff alleges a "violation of a right." *Evans*, 703 F.3d at 646. As the Court described *supra* Part IV.B.1, Plaintiff has sufficiently alleged IP Defendants violated Mr. Thomas's Fourteenth Amendment rights.

IP Defendants argue that Plaintiff must demonstrate that IP Defendants' conduct was both intentional and that they were aware of a substantial risk of serious harm. However, in doing so,

PRJ Defendants conflate the Eighth Amendment deliberate indifference standard with the qualified immunity standard. PRJ Defendants rely on Fourth Circuit cases that assess an *Eighth Amendment* deliberate indifference violation, not a Fourteenth Amendment deliberate indifference violation, when arguing that Plaintiff fails to allege "a violation of a right." *Evans*, 703 F.3d at 646 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The question is not whether Plaintiff sufficiently alleged intentional conduct or awareness of the risk of harm; rather, it is whether Plaintiff has alleged "(1) [] a violation of a right (2) that is clearly established at the time of the violation." *Evans*, 703 F.3d at 646 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

"To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Short*, 87 F.4th at 611–12. As the Fourth Circuit describes in *Short*, under the new Fourteenth Amendment deliberate indifference standard, "[n]egligence was not enough before, and it is not enough now." *Id.* at 612 (citations omitted). However, as the Court discussed at length, *supra* Part IV.B.1, Plaintiff has sufficiently alleged IP Defendants violated Mr. Thomas's Fourteenth Amendment right. Given that there is no dispute as to whether that violation was clearly established at the time, IP Defendants are not entitled to qualified immunity.

Even if IP Defendants were correct and Plaintiff was required to allege intentional conduct or an awareness of the risk of harm to Mr. Thomas, thus meeting the Eighth Amendment deliberate indifference standard, the Court finds that Plaintiff has still met her burden at this stage. *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("[A] plaintiff must show the prison official (1) had 'actual knowledge of the risk of harm to the inmate' and (2) 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs.'" (quoting *Iko*, 535 F.3d at 241)).

Notably, Plaintiff alleges that Defendants Emelianov and Philpott concocted a reason to place Mr. Thomas into isolation, SAC ¶¶ 37–40, despite his serious medical needs that they were aware of, *id.* ¶¶ 32, 35–36, 38, 41, thereby delaying medical care such that Mr. Thomas never received the medical care that he needed. *See Caramillo v. Correct Care Sols., LLC*, 2020 WL 4747786, at *14–15 (E.D. Va. Feb. 28, 2020) (finding corrections officers were deliberately indifferent to the inmate's serious medical needs when they disregarded an inmate's requests for medical treatment despite being aware of the inmate's condition). Similarly, Plaintiff adequately alleged that Defendants Adesina and Hagen actively prevented Mr. Thomas from receiving medical care, SAC ¶ 53, and failed to conduct their required rounds, *id.* ¶¶ 54–56. *See Craft*, 2022 WL 2079312, at *14 (referencing *Sealock v. Colorado* for the proposition that "denial of treatment [that] resulted in seven hours of pain . . . was actionable as a deliberate indifference claim") (citing *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)). The Court finds that, as pled, the actions taken by IP Defendants violated a clearly established right, under the Fourteenth *and* Eighth Amendments, and that Mr. Thomas's rights were, in fact, violated. Thus, IP Defendants are not entitled to qualified immunity.

### 3. Sovereign Immunity of the Pamunkey Regional Jail Authority

Next, the Court turns to Defendant PRJA's argument that it is entitled to sovereign immunity as to Plaintiff's state law claim for negligence.

In Virginia, sovereign immunity bars a plaintiff's "'right of recovery' for state law tort claims against the Commonwealth, unless 'the Commonwealth consents to certain claims or legal actions." *Rucker v. Piedmont Reg'l Jail Auth.*, 2021 WL 3863346, at *6 (E.D. Va. Aug. 30, 2021) (quoting *Sams*, 2020 WL 5835310, at *13). To be considered a part of the Commonwealth, the entity must either constitute an arm of the state or be a "municipal corporation acting a

22

governmental capacity." *Id.* (citing *Heckenlaible v. Va. Reg'l Peninsula Jail Auth.*, 2006 WL 3196750, at *2 (E.D. Va. Nov. 1, 2006)). The Fourth Circuit previously found that regional jail authorities, such as Defendant PRJA, do not constitute an arm of the state. *Kitchen v. Upshaw*, 286 F.3d 179, 184 (4th Cir. 2002). Therefore, Defendant PRJA is only entitled to sovereign immunity so long as it qualifies as a municipal corporation.

There are two guiding factors to determine whether a regional jail authority qualifies as a municipal corporation: (1) "the court must consider what attributes of municipality the entity possesses;" and (2) whether "in light of this initial consideration, the particular purpose for determining whether a municipal corporation is present." *Rucker*, 2021 WL 3863346, at *6 (quoting *Hecklenlaible v. Va. Reg'l Peninsula Jaul Auth.*, 2006 WL 3196750, at *6 (E.D. Va. Nov. 1, 2006)); *see Va. Elec. & Power Co. v. Hampton Redevelopment & Hous. Auth.*, 225 S.E.2d 364, 367 (Va. 1976). Virginia district courts remain split on whether regional jails are entitled to sovereign immunity. The majority of courts in the Eastern District of Virginia have found that regional jails are not entitled to sovereign immunity. *See Rucker*, 2021 WL 3863346, at *6 ("[T]he majority rule among [Virginia regional jail] cases holds that regional jail authorities . . . do no constitute municipal corporations entitled to sovereign immunity."); *Sams*, 2020 WL 5835310, at *12 n.14 (noting that nine of thirteen recent federal district court cases have found no sovereign immunity). Meanwhile, there appears to be a growing consensus among the Western District of Virginia that regional jail are entitled to sovereign immunity. *See Funkhouser v. Brown*, 2024 WL 357311, at *7–8 (W.D. Va. July 29, 2024) (joining at least five federal district courts, mostly within the Western District of Virginia, in finding that regional jails are entitled to sovereign immunity).

The court will first assess the attributes of a municipality as they relate to Defendant PRJA.

*a. Defendant PRJA Lacks Two "Intrinsic Attributes" of Municipal Corporations*

The six attributes of a municipality include:

(1) Creation as a body corporate and politic and as a political subdivision of the Commonwealth; (2) Creation to serve a public purpose; (3) Power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenues, personal and real property; (4) Possession of the power of eminent domain; (5) Power to borrow money and issue bonds which are tax exempt, with interest on such bonds enjoying the same status under tax laws as the interest on bonds of other political subdivisions of the state; (6) Management of the corporation vested in a board of directors or a commission.

*Rucker*, 2021 WL 3863346, at *6 (quoting *City of Richmond v. Richmond Metro. Auth.*, 172 S.E.2d 831, 832 (Va. 1970)).  Many Virginia district courts acknowledge that Virginia regional jails have many of the attributes of a municipality, but that they lack "two attributes that constitute the core of what defines a municipal corporation: '[c]reation as a body corporate and politic and as a political subdivision of the Commonwealth' and the 'power of eminent domain.'"  *Sams*, 2020 WL 5835310, at *15; *see also Rucker*, 2021 WL 3863346, at *6; *Wright v. Va. Peninsula Reg'l Jail Auth.*, 2020 WL 1055665, at *14 (E.D. Va. Mar. 4, 2020) ("[A]n entity cannot be a municipal corporation if it lacks those two attributes [eminent domain and designation as a political subdivision] as those attributes . . . are the 'most intrinsic to municipal corporations.'" (quoting *Heywood v. Va. Peninsula Reg'l Jail Auth.*, 2015 WL 5026188, at *6 (E.D. Va. Aug. 21, 2015))); *Caramillo v. Corr. Care Sols. LLC*, 2020 WL 4747786, at *4 (E.D. Va. Feb. 28, 2020).  More importantly, the Virginia statute authorizing the creation of regional jail authorities is "unambiguous:  the General Assembly chose *not* to denominate regional jail authorities as political subdivisions" or to give them the power of eminent domain."  *Sams*, 2020 WL 5835310, at *16; *see* Va. Code Ann. § 53.1-95.7.

Plaintiff argues that Defendant PRJA is not a municipal corporation and therefore may be held liable for simple negligence.  Reply 3.  Plaintiff relies on *Sams v. Armor Correctional Health*

*Services*, where the court found Pamunkey Regional Jail Authority was not akin to a municipal corporation because it "was not created as a body politic or as a political subdivision, nor has the power of eminent domain." *Id.* at 3–4 (citing *Sams*, 2020 WL 5835310, at \*13, 15–19). On the other hand, Defendant PRJA argues it is akin to a municipal corporation and thus is entitled to sovereign immunity. Resp. Opp'n 6. Specifically, Defendant PRJA argues that it is equivalent to a municipal corporation because it possesses many characteristics of local governments and its operation "is a government function." *Id.* at 6–7 (quoting *Haleem v. Quinones*, 2017 U.S. Dist. LEXIS 162081, at \*7-8 (W.D. Va. Sept. 30, 2017)).

Although it is "not essential that an entity possess all of these attributes," *Fines v. Rappahannock Area Cmty. Srvs. Bd.*, 876 S.E.2d 917, 927 (Va. 2022), the Court finds that, in line with many Virginia federal district courts, Defendant PRJA "lacks two of the attributes 'most intrinsic to municipal corporations.'" *Rucker*, 2021 WL 3863346, at \*6 (citing *Sams*, 2020 WL 5835310, at \*15). Specifically, the Court finds that regional jail authorities lack the power of eminent domain and have not been designated as a political subdivision, which is ultimately fatal to Defendant PRJA in this case. *Id.* (citing *Sams*, 2020 WL 5835310, at \*15); *see also Wright.*, 2020 WL 1055665, at \*14; *Caramillo*, 2020 WL 4747786, at \*4. This Court adopts the reasoning and extensive analysis set forth in *Sams* and similarly finds the first step weighs against finding Defendant PRJA functions as a municipal corporation. *Sams*, 2020 WL 5835310, at \*15–18.

    *b. The Particular Purpose Weighs Against Finding Defendant PRJA Functions as a Municipal Corporation*

The second step in determining whether a regional jail authority qualifies as a municipal corporation is to consider "the particular purpose for determining whether a municipal corporation is present." *Rucker*, 2021 WL 3863346, at \*6. The Virginia Supreme Court has previously held that operating a jail serves as a governmental function. *Sams*, 2020 WL 5835310, at \*18 (citing

*Franklin v. Town of Richlands*, 170 S.E. 718, 719 (Va. 1933)).  However, the Virginia Supreme Court has also found "if the pivotal point under consideration involves a matter of procedure, there is more likelihood that a particular entity will be declared a municipal corporation, but if a point of substantive law is involved, it is less likely that the entity will be declared a municipal corporation." *Fines*, 876 S.E.2d at 926 (quoting *Va. Elec. & Power Co.*, 225 S.E.2d at 367).  In cases where the pivotal point is whether the entity is immune from tort liability, both the Virginia Supreme Court and federal district courts have time and again found that "the application of the doctrine of sovereign immunity [which] protects municipalities from tort liability involves a question of substantive law." *Sams*, 2020 WL 5835310, at *18 (citing *Heywood*, 2015 WL 5026188, at *7); *Fines*, 876 S.E.2d at 926–27.  Put differently, sovereign immunity is a substantive law issue and therefore weighs against finding that an entity is a municipal corporation.

Defendant PRJA proffers that its operations of the jail is undoubtably a government function because the Virginia Supreme Court previously found the operation of a jail to be "governmental."  Resp. Opp'n 7–8 (citing *Dowdy v. Pamunkey Reg'l Jail Auth.*, 2014 WL 2002227, at *2–3 (E.D. Va. May 15, 2014)).  Although Defendant PRJA is correct that it undoubtably carried out a governmental function by operating a jail, *see Sams*, 2020 WL 2002227, at *18, that is not the entire inquiry under step two. *Fines*, 876 S.E.2d at 926 ("[I]f a point of substantive law is involved, it is less likely that the entity will be declared a municipal corporation." (quoting *Va. Elec. & Power Co.*, 225 S.E.2d at 367); *Sams*, 2020 WL 5835310, at *19 ("While PRJA exercises a governmental function in operating a jail, it seeks to avoid liability for a substantive tort claim, thus rendering it 'less likely that the entity will be declared a municipal corporation.'" (quoting *Va. Elec. & Power Co.*, 225 S.E.2d at 367)).  Like *Sams* and *Fines*, the "pivotal point" of why Defendant PRJA seeks recognition as a municipal is to escape tort liability,

which involves a question of substantive law.  Thus, the second step of this analysis also weighs against recognizing Defendant PRJA as a municipal corporation.  *Fines*, 876 S.E.2d at 926.

Based on the foregoing factors, this Court joins the majority of courts in the Eastern District of Virginia in finding that regional jails are not entitled to sovereign immunity in this context. Because the Court has concluded that both factors weigh against finding that regional jails are considered municipal corporations, Defendant PRJA is not entitled to sovereign immunity against Plaintiff's simple negligence claim.

### 4.  Negligence Claims

The Court now turns to PRJ Defendants' arguments regarding Plaintiff's state law claims. Here, PRJ Defendants generally argue that Plaintiff omits any facts to establish that Defendants breached their duties, and thus fail to state a claim of simple, gross, or willful and wanton negligence against PRJ Defendants.  Resp. Opp'n 8.

To state a negligence claim under Virginia law, a plaintiff must allege (1) the existence of a legal duty, (2) a breach of said duty, (3) proximate cause, and (4) injury to the plaintiff.  *Brown v. Wal-Mart Stores E., LP*, --- F.4th ---, 2025 WL 1571824, at *3 (4th Cir. 2025).  Under Virginia law, there are "three degrees of negligence: (1) simple or ordinary negligence; (2) gross negligence; or (3) willful or wanton negligence."  *Wilson v. Pamunkey Reg'l Jail Auth.*, 2024 WL 4122033, at *15 (E.D. Va. Sept. 6, 2024) (citing *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)).  These three degrees "do not represent separate claims or theories of liability."  *Wilby v. Gostel*, 578 S.E.2d 796, 800–01 (Va. 2003).  Rather, the degrees of negligence refer to the degree of proof applied to the "same theory of liability."  *Id.* at 801.  Therefore, the fact finder "determines the appropriate level of negligence after the parties have conducted discovery, on a motion for summary judgment, or during trial."  *Wilson*, 2024 WL 4122033, at

*15 (citing *Wilby*, 578 S.E.2d at 801). It is *only* when "reasonable minds could not differ," that a Court should decide the appropriate level of negligence. *See id.* (quoting *Poliquin v. Daniels*, 486 S.E.2d 530, 534 (Va. 1997)).

Here, Plaintiff alleges simple negligence, gross negligence, and willful and wanton negligence against IP Defendants, and seeks to hold Defendant PRJA liable under the theory of *respondeat superior*. The Court will begin with assessing whether Plaintiff states a claim of willful and wanton negligence against IP Defendants.

### a. Willful & Wanton Negligence (Count III)

"Willful and wanton negligence 'is defined as acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Boley v. Armor Corr. Health Servs., Inc.*, 2022 WL 905219, at *12 (E.D. Va. Mar. 28, 2022). Similar to the Eighth Amendment deliberate indifference standard, a claim for willful and wanton negligence requires that a defendant know his or her actions were likely to cause harm. *Wilson*, 2024 WL 4122033, at *17 (citing *Hixson v. Hutscheson*, 2018 WL 814059, at *6 (W.D. Va. Feb. 9, 2018)); *Boley*, 2022 WL 905219, at *12 (noting the "definition of willful and wanton negligence 'nearly mirrors the subjective prong of the [deliberate indifference] test'" (quoting *Hixson*, 2018 WL 814059, at *9)). The subjective prong of deliberate indifference under the Eighth Amendment standard requires that the defendants "'actually knew of and disregarded an objectively serious condition, medical need, or risk of harm,' just as the willful and wanton standard requires that the defendant 'act[ed] consciously in disregard of another person's rights or act[ed] with reckless indifference to the consequences.'" *Boley*, 2022 WL 905219, at *6

(comparing *Jehovah v. Clarke*, 798 F.3d 169, 181 (4th Cir. 2015), with *Doe ex rel. Doe v. Baker*, 857 S.E.2d 573, 587 (Va. 2021)).

Plaintiff claims that IP Defendants knew Mr. Thomas was in dire need of medical assistance—he was screaming out in pain, had swollen extremities, was vomiting, and could not stand or walk on his own. Reply 10. With this knowledge of Mr. Thomas's symptoms, Plaintiff argues that it would be unreasonable for IP Defendants to believe that Mr. Thomas's condition would not cause further injury. *Id.* IP Defendants counter that Plaintiff fails to allege that they knew their actions, or inactions, could result in significant harm to Mr. Thomas, which is required to state a claim for willful and wanton negligence. Resp. Opp'n 12.

At this stage, the Court finds Plaintiff has stated a claim for willful & wanton negligence. Plaintiff's allegations that Defendants Emelianov and Philpott "ignored [Mr. Thomas's] complaint of extreme pain" and requests for medical attention, and instead facilitated his placement on suicide watch, permit an inference at this stage that Defendants Emelianov and Philpott knew that their denials of care and subsequent transfer of Mr. Thomas were likely to injure him further. *Wilson*, 2024 WL 4122033, at *17 ("Because Mr. Wilson's allegations permit an inference that the PRJA employees knew that denying his treatment requests would likely injure Mr. Wilson, the Court will deny the PRJ Motion as to the willful and wanton negligence claim against PRJA."); SAC ¶¶ 34–40. Similarly, Plaintiff alleges that Defendants Hagen and Adesina prevented a medical provider from seeing Mr. Thomas, thereby denying and deliberately interfering with Mr. Thomas's medical evaluation and possible treatment. SAC ¶¶ 53–54; *Boley*, 2022 WL 905219, at *6 (finding that, under the Eight Amendment deliberate indifference subjective prong, "a correctional officer's refusal to call for medical staff is usually sufficient, at the motion to dismiss stage, to sustain a claim that the officer was personally involved in the denial of treatment or

deliberately interfered with treatment.").  This too is sufficient to state a claim of willful and wanton negligence against Defendants Hagen and Adesina.

### b. Gross Negligence (Count II)

Gross negligence is defined as "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Elliott v. Carter*, 292 Va. 618, 622 (2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004).  "A gross negligence claim under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eighth and Fourteenth Amendments."  *Boley*, 2022 WL 905219, at *3 (quoting *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021)); *Sosa*, 2025 WL 864291, at *12 ("[T]he *Short* standard for deliberate indifference remains at least as demanding as the gross negligence standard."); *Rucker*, 2021 WL 3863346, at *8 ("Because the Court has already determined that Plaintiff has stated a claim for deliberate indifference, the Court concludes that he has likewise stated a claim for gross negligence against these Defendants.").  The Court concluded, *supra* Part IV.B.1, that Plaintiff adequately alleged a deliberate indifferent claim under both the Fourteenth Amendment and the Eighth Amendment, *supra* Part IV.B.2.  Therefore, the Court finds that Plaintiff has pled a plausible gross negligence claim against IP Defendants, because gross negligence constitutes a lesser standard of recklessness than deliberate indifference.

### c. Simple Negligence (Count I)

Similarly, the Court finds that because Plaintiff stated a claim for both gross negligence and willful and wanton negligence, "such claim[s] necessarily encompasses a claim for ordinary negligence under Virginia law."  *Sosa*, 2025 WL 864291, at *12 (E.D. Va. Mar. 19, 2025) (citing *Rucker*, 2021 WL 3863346, at *8); *see also Rucker*, 2021 WL 3863346 at *8 ("[B]ecause simple

negligence constitutes a lower degree of negligence than gross negligence, [and] because Plaintiff has adequately alleged a gross negligence claim, Plaintiff has also necessarily stated a claim for simple negligence." (citing *Cowan*, 603 S.E.2d at 918)).   Therefore, the Court concludes that Plaintiff's allegations contained in the SAC support all three degrees of negligence encompassed in Counts I, II, and III.

      *d.* Respondeat Superior

      Finally, the Court turns to PRJ Defendants' contention that Defendant PRJA may not be held liable for simple, gross, or wanton and willful negligence under the doctrine of *respondeat superior*.  *See* Resp. Opp'n 13–14.

      The theory of *respondeat superior* allows a plaintiff to recover damages from the employer of a tortious employee when "the employee was performing his employer's business and acting within the scope of his employment."  *Sosa*, 2025 WL 864291, at *12 (quoting *Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987)).  Under *respondeat superior*, an employer may be liable for its employees' negligent, gross negligent, and/or willful and wanton negligent acts.  *See e.g.*, *Wilson*, 2024 WL 4122033, at *17–18 (finding that plaintiff successfully stated a claim for willful and wanton negligence, gross negligence, and simple negligence against employer Pamunkey Regional Jail Authority under a *respondeat superior* theory).

      Defendant PRJA raises two arguments with respect to Plaintiff's *respondeat superior* claim.  Resp. Opp'n 13–14.  First, Defendant PRJA contends that, because Plaintiff's allegations are insufficient to form any negligence claim against any IP Defendant, Defendant PRJA cannot be held liable under *respondeat superior*.  *Id.* at 14.  Second, Defendant PRJA argues that Medical Defendants were independent contractors and *repsondeat superior* does not permit liability for the

negligent acts of independent contractors, thus relieving it of liability for any negligence on behalf of these Defendants. *Id.* at 13.

Plaintiff counters that she has sufficiently alleged that IP Defendants were negligent and therefore, Defendant PRJA is liable under *respondeat superior*. Reply 11. Plaintiff also argues that a principal, such as Defendant PRJA, may be liable for an independent contractor's negligent acts when the principal has a non-delegable duty to a third party. *Id.*

The Court first addresses the *respondeat superior* argument as it pertains to the IP Defendants before turning to the parties' arguments on how this doctrine applies to the Medical Defendants.

Here, Plaintiff's *respondeat superior* claim as to IP Defendants is not futile because the Court has determined that she has sufficiently alleged her simple, gross, and willful and wanton negligence claims against IP Defendants, *see supra* Part IV.B.4. Thus, the Court disagrees with Defendant PRJA's argument that it avoids liability under *respondeat superior* for the negligence of the IP Defendants due to flaws in the underlying claims. Further, Plaintiff clearly alleges that these negligent acts took place within IP Defendants' course and scope of employment with Defendant PRJA. *See* SAC ¶¶ 10–13, 29, 54. As such, Defendant PRJA can be held liable via *respondeat superior* for the actions of IP Defendants.

With regards to Medical Defendants, Defendant PRJA correctly points out that Plaintiff's SAC states that Medical Defendants "provided services" to Defendant PRJA, and/or its facilities "by contract." SAC ¶ 16.[3] As articulated above, employers may not be held liable for the actions of independent contractors. *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 304 (2005). While

---

[3] The First Amended Complaint states that Medical Defendants provided their services to Defendant PRJA "as an independent contractor." Am. Compl. ¶ 17, ECF No. 58. Though Plaintiff tweaks her framing of this issue slightly in the SAC, this amendment does not change the implications for Defendant PRJA and Medical Defendants.

Plaintiff states that Defendant PRJA has a "non-delegable duty to a third party," Plaintiff does not provide, nor is the Court aware of, support for the proposition that this duty extends to regional jails providing medical care to their detainees.  In her SAC, Plaintiff attempts to hold Defendant PRJA liable for both IP Defendants and Medical Defendants' negligence under the doctrine of *respondeat superior* on all four of her claims.  *See* SAC ¶¶ 112, 125, 139, 155.  In Plaintiff's First Amended Complaint, Plaintiff seeks to hold Defendant PRJA liable for Medical Defendants' negligence via *respondeat superior* on just her negligence and gross negligence claims.   Am. Compl. ¶¶ 74, 84.  Though Medical Defendants do not contest Plaintiff's Motion to Amend, the Court does not permit Plaintiff to amend the First Amended Complaint to establish *respondeat superior* liability for Defendant PRJA with respect to *all* Defendants.

In sum, Plaintiff has sufficiently alleged claims against Defendant PRJA for the simple, gross, and willful and wanton negligence of IP Defendants through *respondeat superior*, such that her amendments to this effect are not futile.   However, because Medical Defendants are independent contractors, rather than employees of Defendant PRJA, *respondeat superior* liability may not be imposed on Defendant PRJA for the negligence of these Defendants.  As such, Plaintiff is not permitted to amend her First Amended Complaint as it pertains to *respondeat superior* liability for Medical Defendants' negligence.

## V. CONCLUSION

For the reasons stated above, the Court will deny in part and grant in part Plaintiff's Motion to Amend.  Plaintiff is denied leave to amend to establish *respondeat superior* liability for Defendant PRJA based on the negligent acts of Medical Defendants.  Because the Court does not find that amendment would be unduly prejudicial or futile with respect to all other issues, the Court will grant the remainder of Plaintiff's Motion to Amend.

An appropriate Order shall issue.

_____ /s/

Roderick C. Young
United States District Judge

Date: <u>September 19, 2025</u>
Richmond, Virginia